**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SANDRA K. OLIVER, ) | |
| ) | CASE NO. 3:14-cv-1793 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JEFFREY J. HELMICK |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Sandra K. Oliver ("Oliver") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Oliver's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On June 28, 2011, Oliver filed an application for POD, DIB, and SSI alleging a disability onset date of November 1, 2005. (Tr. 127.) Her application was denied both initially and upon reconsideration. *Id*.

On April 2, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Oliver, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 127.) On April 17, 2013, the ALJ found Oliver was able to perform her past relevant work and, therefore, was not disabled. (Tr. 135-136.) The ALJ's decision became final when the Appeals

Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-eight (48) at the time of her administrative hearing (Tr. 70), Oliver is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). Oliver has a high school education and past relevant work as a waitress. (Tr. 70, 135.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Oliver was insured on her alleged disability onset date, November 1, 2005, and remained insured through March 31, 2010. (Tr. 129.) Therefore, in order to be entitled to POD and DIB, Oliver must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See*

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

*Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Oliver established medically determinable, severe impairments, due to hypertension, chronic obstructive pulmonary disease (COPD), emphysema, leg swelling, and obesity. (Tr, 129.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 131.) Oliver was found capable of performing her past relevant work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work. *Id*. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Oliver was not disabled. (Tr. 135.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d

3

762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Mental Impairments*

Oliver argues that the ALJ erred by failing to properly evaluate her mental impairments and resulting functional limitations as required by 20 C.F.R. § 404.1520(a). (ECF No. 13 at 3-6.)

She avers that the ALJ failed to use the "special technique" for evaluating mental impairments. *Id*. The Commissioner argues that the ALJ found Oliver's mental impairments were non-severe at Step Two of the sequential evaluation, yet he continued to consider them in the context of the four functional areas in accordance with the regulations. (ECF No. 14 at 7-8.) The decision contains the following discussion pertinent to Oliver's mental impairments:

> The claimant's medically determinable mental impairments of depression, anxiety, and borderline intellectual functioning, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. Treatment notes indicated the claimant felt good with her medications (Exhibit 9F). She exhibited normal thought processes, moods were better with medication, she exhibited good insight and judgment, and her mood was reported to remain stable without any significant mood cycles (Exhibits 19F; 23F; 29F; 33F). She reported she was in learning disabled classes during school (Exhibit 11F). She reported graduating high school and reported never having difficulty learning her jobs (Exhibit 11F). Upon examination, she was noted to be functioning intellectually within the borderline range, she was able to read, drive, and had no difficulties with her memory (Exhibit 11F). Upon an additional examination, the claimant's intellectual functioning and mental status appeared normal (Exhibit 12F).
>
> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: no more than mild restriction in activities of daily living, no more than mild difficulties in maintaining social functioning, no more than mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(l) and 416.920a(d)(l)).
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 130.)

The Court finds the briefs of both parties unhelpful in addressing this issue. Though Oliver contends that the ALJ failed to use the "special technique" for evaluating mental impairments, her brief contains no meaningful discussion of the requirements of the "special technique" other than a citation to the relevant regulation. (ECF No. 13 at 4.) She also includes a quotation from an unpublished district court opinion, *Irizarry v. Colvin*, No. 1:13-cv-02161, 2014 WL 6879117 at *11 (N.D. Ohio, Dec. 4, 2014), but fails to include any analysis as to how that decision is analogous to the case at bar. *Id*. Even assuming *arguendo* that the special technique was not followed, Oliver cites no authority for the proposition that failure to do so results in *per se* error. Finally, Oliver's limited half-page discussion of the medical evidence in the Statement of Facts seriously hampers this Court's ability to meaningfully review her assignments of error.[2] (ECF No. 13 at 3.)

The Commissioner also cites no case law discussing the requirements of 20 C.F.R. § 404.1520(a). (ECF No. 14 at 8-10.) Furthermore, the Commissioner does not explicitly argue that the ALJ comported with the requirements of the "special technique," nor does she discuss the ramifications of the failure to do so. *Id*. Instead, the Commissioner engages in an extensive discussion of the medical evidence that ostensibly would support the ALJ's findings with respect to Oliver's mental impairments, most of which was not set out in the decision itself. (ECF No. 14 at 9-12.)

Nonetheless, the Court will endeavor to address Oliver's "argument" to the extent it has been raised, but declines to further develop the argument on her behalf or to search the record for supporting facts. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott*

---

[2] Pursuant to the Court's Initial Order, "**All facts relevant to the legal issues and discussion must be set forth in the "Facts" section.**" (ECF No. 5 at 2) (emphasis in original). This deficiency is not ameliorated by later, unexplained string citations to the record.

6

*Labs.*, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). A court is under no obligation to scour the record for errors not specifically identified by a claimant, *Howington v. Astrue*, 2009 U.S. Dist. LEXIS 72748, 2009 WL 2579620, *6 (E.D. Tenn. Aug.18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 91713, 2009 WL 3153153, at *7 (W.D. Mich. Sep.29, 2009) (*citing McPherson*, 125 F.3d at 995-96) (noting that conclusory claim of error without further argument or authority may be considered waived); *see also Lewis v. Astrue*, 2010 U.S. Dist. LEXIS 146, 2010 WL 55329, (E.D. Tenn. Jan 4, 2010).

Pursuant to 20 C.F.R. § 404.1520a(a), "when [the Social Security Administration] evaluate[s] the severity of mental impairments for adults ... [it] must follow a ***special technique*** at ***each level*** in the administrative review process." (Emphasis added). The "special technique" is set forth in § 404.1520a(b) through (e):

>  (b) *Use of the technique*.
>
>  (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).... If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
>
>  (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.
>
>  (c) *Rating the degree of functional limitation*.
>
>  (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
>
>  (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance

you require, and the settings in which you are able to function....

  (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.

  (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

(d) *Use of the technique to evaluate mental impairments*. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).

  (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

  (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). See paragraph (e) of this section.

  (3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

(e) *Documenting application of the technique*.... At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision. The following rules apply:

* * *

  (4) At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

8

Other than stating in a conclusory manner that the ALJ's analysis was "perfunctory" and "cherry-picked," Oliver fails to develop a meaningful argument and does not identify deficiencies in the ALJ's use of the special technique quoted above.[3] (ECF No. 13 at 4.) While the ALJ's discussion could have been more thorough (Tr. 130), there is no indication that the ALJ failed to consider the relevant and available evidence. Oliver cites no law suggesting that it is incumbent upon the ALJ to expressly discuss each bit of evidence. Though Oliver asserts that she received treatment and medications for a number of mental impairments, she fails to articulate how this treatment undermined the ALJ's determination that her impairments were non-severe.[4] (ECF No. 13 at 4.) A diagnosis alone does not indicate the functional limitations caused by the condition. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that condition is disabling).

The ALJ continued with the special technique and rated Oliver's functioning in the four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. He found mild restriction in the first three areas, and no episodes of decompensation in the fourth area. (Tr. 130.) According to the regulation itself, "if we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe." 20 C.F.R. 404.1520a(d)(1). The ALJ's finding that Oliver's mental impairments were non-severe, therefore, complied with the special technique.

Oliver goes on to argue that the ALJ failed to include any mental limitations in the RFC determination. (ECF No. 13 at 4-6.) However, Oliver has failed to establish any error at the ALJ's finding in his Step Two determination that the mental impairments were non-severe.

---

[3] Oliver's assertion that the ALJ ignored the opinions of various medical sources is redundant of her argument in her third assignment of error addressed below.

[4] Oliver cites over ninety pages of the record without explanation.

9

In the Sixth Circuit, an impairment is considered severe if it has "more than a minimal effect" on the claimant's ability to do basic work activities. SSR 96-3p, 1996 SSR LEXIS 10, 1996 WL 374181 at *1; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007) ("Step two has been described as a '*de minimus* hurdle'"). As such, if there is no identifiable error with respect to the finding that Oliver's mental impairments were non-severe, it would be inconsistent to find that impairments, which do not have more than a minimal effect on her ability to perform basic work activities, should be accounted for in the RFC. Furthermore, Oliver again fails to identify any medical evidence supporting additional limitations that should have been included in the RFC aside from the opinions of State Agency consultants and consultative examiners, addressed below.

As such, the Court finds that Oliver has failed to identify any error with respect to the ALJ's use of the special technique. Any related arguments, not expressly raised in her Brief on the Merits, are deemed waived.

*Lower Leg*

In her second assignment of error, Oliver contends that the RFC failed to sufficiently account for the functional impact caused by her leg swelling despite including the swelling among the list of severe impairments. (ECF No. 13 at 6-7.)

A claimant's RFC is the most that she can still do despite her functional limitations. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 SSR LEXIS 5. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. 20 C.F.R. § 404.1546(c). At the hearing level, the ALJ is responsible for assessing the RFC. 20 C.F.R. § 404.1546(c). While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. *App'x 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (citing* Youghiogheny & Ohio Coal Co. v. Webb, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess

credibility.")  Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 2009 WL 2514058 (6th Cir. 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. App'x. 149, 2009 WL 2514058 at * 7.

The ALJ considered Oliver's complaints of leg swelling as evidenced by the following portion of the decision:

> At hearing the claimant complained of leg swelling below the knee.  Recent medical records documented lower leg swelling and pain; however, this condition was not evidenced consistently throughout the record (Exhibit 30F).  Previous records indicated the claimant reported having some edema but that it resolved during the night while sleeping (Exhibit 24F).  During examinations, she was observed to ambulate well, she did not evidence any weakness, and she had a full range of motion of her extremities (Exhibit 9F).  She did not evidence joint swelling, clubbing, cyanosis, or edema (Exhibits 10F; 16F).  Radiological testing and an ultra sound of her knee were unremarkable (Exhibit 2F).  The claimant's leg swelling, based on the medical record, appears to be an intermittent condition, rather than a continual condition significantly impacting her ability to ambulate effectively.

(Tr. 132.)

Oliver's argument consists of nothing more than a recitation of some of the evidence related to her leg swelling that she believes would justify greater functional limitations than those ultimately found by the ALJ. (ECF No. 13 at 7.)  To the extent Oliver is simply arguing that substantial evidence of record was capable of supporting the inclusion of some additional limitations, such an argument is immaterial and misconstrues the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998)(*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). As such, even if the evidence of record could have justified finding more restrictions, that alone does not demonstrate that the RFC was not supported by substantial

11

evidence. Oliver's brief amounts to an invitation to reweigh the evidence, and this Court declines to do so. As such, the second assignment of error is also without merit.

***Weight Ascribed to Medical Sources***

In parts of her first assignment of error and again in her third assignment of error, Oliver argues that the ALJ erred in his evaluation of various medical sources of record. (ECF No. 13 at 4-5, 8-10.)

On August 23, 2011, Don McIntire, Ph.D., evaluated Oliver who was referred by the Division of Disability Determination. (Tr. 543, Exh. 11F.) Dr. McIntire opined that Oliver's ability to understand, remember, and carry out instructions was somewhat poor, as was her ability to maintain attention and concentration. (Tr. 549.) He further opined that Oliver's ability to respond to supervision and coworkers was poor, and that her ability to respond appropriately to work pressures was at least mildly limited. (Tr. 550.)

On August 31, 2011, State Agency consultant Bruce Goldsmith, Ph.D., found Oliver had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration persistence or pace, but no episodes of decompensation. (Tr. 189-190, 207-08, Exhs. 1A & 3A.) This finding was echoed by State Agency consultant Caroline Lewin, Ph.D., on December 26, 2011. (Tr. 244, Exh. 7A.) In addition, Dr. Goldsmith opined Oliver had moderate limitations in a number of areas of mental functional capacity, as did Dr. Lewin.[5] (Tr. 195, 211-13, 230-32, 248-50, Exhs. 1A, 3A, 5A & 7A.)

On September 7, 2011, examining physician Orin L. Hall, M.D., stated that, based on his examination, Oliver should be limited to light work. (Tr. 554, Exh. 12F.) He further opined that Oliver would have difficulty with walking further than 50 feet, standing for more than 15

---

[5] Dr. Goldsmith indicated that opinions of Orin L. Hall, M.D., Donald H. McIntire, Ph.D., and Dr. Fatima Taslkova were all more restrictive than his opinion. (Tr. 196.) As to each of those opinions, Dr. Goldsmith stated that those opinions, were "without substantial support from other evidence of record," rendering them less persuasive. (Tr. 196.) He also disagreed with the first two doctors' opinions because they relied heavily on Oliver's subjective reports and were based on a snapshot of Oliver's functioning. *Id.*

12

minutes, and sitting for more than 30 minutes at a time. *Id*.

Oliver also asserts that the findings of Dr. Fatima Taslikova, who treated her for bipolar disorder, anxiety, obsessive compulsive disorder, mood swings, anger, and irritability, support the opinions of Dr. McIntire, Dr. Goldsmith, and Dr. Lewin. (ECF No. 13 at 9.) Notably, Oliver does not argue that the ALJ rejected any of Dr. Tsalikova's opinions. Even if such an argument can be inferred, she does not identify which of her opinions was rejected. As such, this Court's analysis will focus solely on whether the ALJ erred in his handling of the above identified non-treating sources.

> In addressing these opinions, the decisions states as follows:
>
> As for the opinion evidence, the undersigned affords little weight to the opinion of consultative examiner Donald H. McIntire, Ph.D., evidenced at Exhibit 11F. Dr. McIntire opined the claimant's ability to understand, remember, and carry out instructions was poor, her ability to maintain attention to perform simple tasks was limited, her ability to respond to supervision and coworkers in a work setting was poor, and she was at least mildly limited in her ability to respond appropriately to work pressures in a work setting. The undersigned gives this opinion little weight because it is inconsistent with the claimant's own reporting. The record documents within the same exhibit that the claimant never had difficulties learning her jobs, that she gets along fairly well with others, and that she had no memory difficulties. Dr. McIntire's assessment is inconsistent with the longitudinal evidentiary medical record.
>
> The undersigned affords little weight to the opinion of consultative examiner Orin L. Hall, M.D., evidenced at Exhibit 12F. Dr. Hall opined the claimant should be limited to light work. The undersigned gives this little weight because Dr. Hall's opinion is based on a one time cursory examination of the claimant. Dr. Hall's opinion is inconsistent with the longitudinal evidentiary record. Additionally, his opinion is largely based on the claimant's subjective complaints, yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.
>
> The undersigned affords little weight to the opinion of the State Agency medical consultants' assessments evidenced at Exhibits 1A, 3A, 5A, and 7A. The undersigned affords these opinions little weight because other medical opinions are more consistent with the record as a whole and evidence received at the hearing level shows that the claimant is less limited than determined by the State Agency consultants.

(Tr. 134-135.)

Pursuant to 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i), "[ALJs] are *not* bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." Nonetheless, because said consultants are "highly qualified

13

physicians, psychologists, and other medical specialists" ALJs must "consider" their findings. *Id*. When considering these opinions, ALJs should consider factors such as the nature of the relationship *i.e.* examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. §§ 404.1527(e) & 416.927(e). Furthermore, the regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(e)(2)(ii) & 416.927(e)(2)(ii). In other words, although, "[ALJs] and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 SSR LEXIS 3, *5, 1996 WL 374180, *2 (Jul. 2, 1996).

Nonetheless, this *explanation* requirement should not be confused with the standard required for the weight ascribed to treating sources. In her reply, Oliver asserts that this matter should be remanded so that the ALJ can provide "good reasons for the weight assigned to each of the medical sources." (ECF No. 15 at 3.) This is a misstatement of the ALJ's obligations. The Sixth Circuit has held that the regulation requiring an ALJ to provide "good reasons" for the weight given a treating physician's opinion does *not* apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006). The "good reasons" rule applies only to treating sources. Oliver further contends that the decision lacks a "substantive analysis," but her third assignment of error makes only scant citations to relevant legal authorities. (ECF No. 13 at 8-10.)

Furthermore, at the conclusion of her argument, Oliver appears to imply that the ALJ must identify a specific medical source opinion that supports the RFC determination. (ECF No. 13 at 10.) Again, Oliver cites no law suggesting that an ALJ errs by shaping the RFC from a myriad of sources, including both medical and non-medical. As stated by another district court

14

within this Circuit, "the ALJ is charged with evaluating all of the myriad evidence in the record and synthesizing it into a concise RFC. It is not necessary for the RFC to reflect the [sic] any specific medical opinion in the record, and the ALJ 'does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.'" *Saragas v. Astrue*, 2010 WL 3432207 at *6 (E.D. Ky., Aug. 30, 2010) (*quoting Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 439 (6th Cir. 2010). The *Saragas* court further explained that "[a]lthough Plaintiff is correct that the RFC assessed by the ALJ is not reflective of any particular medical source, this observation is of no moment as the RFC is supported by substantial evidence as it is reflective of several medical sources and the record as a whole." *Id*. In *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 438-39 (6th Cir. 2012), the Sixth Circuit found that the ALJ appropriately considered the factors when it explained that medical source opinions were accorded little weight because they were based on "one-time consultative examinations, were not supported by the overall record evidence, and contained findings inconsistent with other evidence on record." Here, the ALJ's decision is clearly not devoid of explanation as to the weight he ascribed or the reasons therefor. While the ALJ could have been more precise in identifying which specific portions of the medical record or the hearing testimony he was relying upon, Oliver has not demonstrated that the explanation given is legally insufficient. As such, her third assignment of error is without merit.

***Credibility***

In her final assignment of error, Oliver contends that the ALJ's credibility assessment was deficient because he failed to provide specific rationale as required by Social Security Ruling (SSR) 96-7p. (ECF No. 13 at 10-11.) The Commissioner's brief does not address this argument. (ECF No. 14.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on

15

credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005).

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96–7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider.[6] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F.Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D.Wis.2005).

Oliver's argument is not altogether clear. While she does set forth the correct legal standard and the factors that should be considered, Oliver does not identify which portion of her testimony was improperly rejected as incredible. (ECF No. 13 at 10-11.) Oliver spends half of her short, one-page argument taking issue with the ALJ's allegedly aggressive and confusing line of questioning regarding whether she had previously worked as a bartender. *Id*. She contends that the ALJ's characterization of her testimony in this regard as "evasive" is a misstatement of the record. *Id*. Nor does Oliver explain how this dispute is material. The ALJ ultimately found that Oliver could perform her past relevant work as a waitress – not as a bartender. (Tr. 135.) Furthermore, even if this dispute had any meaningful impact on the disposition of this case, the

---

[6] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F.Supp.2d at 732.

ALJ's findings are entitled to considerable deference, as this Court can only review the transcript and, unlike the ALJ, has no opportunity to take note of the witness's demeanor or tone.

The Court does acknowledge that the credibility analysis is not a model of clarity, and requires a reviewing court to consider the opinion as a whole. Preferably, an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to better "trace the path of the ALJ's reasoning." *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005). However, "while such a highly focused analysis might be preferable, it is not required. Rather, when specific reasons for discounting credibility, supported by evidence in the record, are present within the text of the opinion, and not supplied later as a *post hoc* rationalization by the Commissioner's counsel, the articulation will be deemed sufficient." *Crouse v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 70385 at *7 (N.D. Ohio, Mar. 25, 2014). Here, reviewing the decision as a whole, the ALJ frequently mentions some of Oliver's complaints and explains why he finds them credible or not, with adequate citation to the record. As examples, the ALJ discussed why Oliver's complaints of lower leg swelling were not credible, why her allegations of rapid weight gain were not credible, and why he determined the alleged severity of Oliver's breathing impairment also not credible. (Tr. 132-133.)

As mentioned, Oliver has not identified which portions of her testimony were improperly rejected. Under these circumstances, the Court finds Oliver has failed to establish that the ALJ's decision failed to comport with the rules and regulations governing credibility assessments. As such, Oliver's fourth assignment of error is also without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White
United States Magistrate Judge

Date: June 25, 2015

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).